ORIGINAL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

           - v. -                 :

THOMAS HOEY, JR.,                 :

           Defendant.             :

- - - - - - - - - - - - - - - - - - x

INDICTMENT

15 Cr. CRIM 229

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: APR 13 2015

COUNT ONE
(Embezzlement from an Employee Benefit Plan)

The Grand Jury charges:

BACKGROUND

1. From at least in or about 2003, and at all times relevant to this Indictment, THOMAS HOEY, JR., the defendant, was the owner and president of a company and its affiliates based on Long Island, New York, whose principal business involved the wholesale distribution of bananas and other produce (the "Company"). During the time that HOEY owned and controlled the Company, the Company generated as much as approximately $30 million in annual gross sales.

2. Prior to 2003, the Company created a profit sharing plan (the "Plan") for the benefit of the Company's employees. The Plan was an employer contribution Plan, pursuant to which, on a yearly basis, the Company could elect to contribute a percentage of the Company's profits to be allocated to individual employees' retirement accounts. The Plan was set up as an employee pension

JUDGE FURMAN

benefit plan as defined under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), which, among other things, allowed the employee-beneficiaries of the Plan to defer paying income taxes on the contributions made by the Company. Beginning at least in or about 2003, when THOMAS HOEY, JR., the defendant, took control of the Company, HOEY was designated as the trustee for the Plan. HOEY was also an employee-beneficiary of the Plan. Contributions to the Plan were maintained in one or more brokerage or bank accounts (the "Plan Account" or "Plan Accounts").

3. Because the Plan was organized under ERISA, it was subject to statutory and regulatory restrictions. Among other limitations, money, once contributed to the Plan, could not be taken out except for specifically enumerated purposes. In particular, proceeds could be withdrawn to pay employee disbursements and for approved employee loans that, in no circumstances, could be greater than $50,000. THOMAS HOEY, JR., the defendant, could be approved for loans from the Plan, up to the $50,000 limit, only in his capacity as an individual employee-beneficiary, and not as trustee for the Plan. Moreover, under ERISA, the Company, as the Plan sponsor, was not allowed to receive any money from the Plan.

4. Employees of the Company who participated in the Plan were provided a summary of the plan terms (the "Summary Plan Description"). The Summary Plan Description stated, among other

2

things, that: (a) the employer contributions to the Plan were held in trust; (b) the individuals who operated the Plan were fiduciaries of the Plan who were required to operate the Plan prudently and in the interest of the plan participants and beneficiaries; (c) the maximum amount of any loan from the Plan was the lesser of $50,000 or 50 percent of the individual's vested interest in the Plan; (d) the balance for all outstanding loans to any single participant could not exceed $50,000; and (e) an individual could have no more than one loan outstanding at any given time. Employee-beneficiaries were also supposed to be provided, on a yearly basis, a participant account statement, listing, among other things, the participant's balance, any gain or loss or employer contribution since the prior statement, and the participant's vested balance (the "Account Statements"). After in or about 2006, Account Statements were not consistently provided on a yearly basis.

5. Beginning in or about 1999, a particular third party administrator (the "TPA") became the administrator for the Plan. In that capacity, the TPA was responsible for, among other things, preparing forms and schedules for the Plan that were required to be submitted to the Internal Revenue Service ("IRS") and the United States Department of Labor ("DOL") on an annual basis, including IRS/DOL Form 5500 ("Annual Return/Report of Employee Benefit Plan"), and preparing benefit distribution forms. THOMAS HOEY, JR., the

3

defendant, was listed as the trustee for the Plan on records maintained by the TPA from at least as early as 2009. On IRS/DOL Form 5500s dating back to at least plan year 2000, HOEY was listed as the plan administrator, and beginning in at least plan year 2002, HOEY was listed as the sole trustee for the Plan, to the extent a trustee was listed.

6. In or about 2009, THOMAS HOEY, JR., the defendant, moved the Plan Accounts and other corporate accounts to a particular financial services firm ("Brokerage Firm-1") under the management of a particular broker (the "Broker"). Brokerage Firm-1 was associated with a certain commercial bank ("Bank-1"). The Plan Accounts at Brokerage Firm-1 were specifically designated as accounts for the Plan. In or about October 2009, the Broker moved to a different financial services firm ("Brokerage Firm-2"), and HOEY moved the Company's accounts to Brokerage Firm-2. The Plan Accounts were moved into one Plan Account at Brokerage Firm-2. Brokerage Firm-2, which was based in Manhattan, New York, cleared its trades through a clearing firm based in Birmingham, Alabama (the "Clearing Firm"). At Brokerage Firm-2, the Plan Account continued to be designated as a profit sharing plan account. In or about 2010, HOEY moved all of the Company's accounts from Brokerage Firm-2, ultimately, in or about 2012, to accounts at a different commercial bank ("Bank-2"). Although one of the accounts opened at Bank-2 was,

4

according to the Company's accountant, purported to be the Plan Account, no account was specifically titled as an account for a profit sharing plan.

## HOEY's Embezzlement of the Plan Proceeds

7. Beginning in or about June 2009, in violation of the restrictions on the use of funds in the Plan, THOMAS HOEY, JR., the defendant, transferred substantially all of the assets of the Plan to corporate accounts for the Company. In particular, in three transactions on or about June 11, 2009, HOEY transferred or caused to be transferred $350,000 from the Plan Accounts at Brokerage Firm-1 to a particular company account at Brokerage Firm-1 ("Corporate Account-1"). In addition, in one transaction on or about May 13, 2010, HOEY transferred or caused to be transferred $415,000 from the Plan Accounts at Brokerage Firm-2 to Corporate Account-1. And finally, on or about July 17, 2012, HOEY transferred or caused to be transferred $73,000 from the Plan Account at Bank-2 to a corporate bank account at Bank-2 ("Corporate Account-2"). By in or about the end of 2012, as a result of these transfers, as well as fees on the nominal balance on the Plan Account at Bank-2, the Plan was almost entirely depleted.

8. The amounts transferred from the Plan to the corporate bank accounts were used to cover significant negative balances at the Company and/or make purchases of additional produce. For example:

a. At the time of the transfers totaling $350,000 on or about June 11, 2009, Corporate Account-1 had a negative balance of approximately $307,000. That negative balance was caused, in part, by the payment, the day before, of over $220,000 from Corporate Account-1 to a produce wholesaler based in Staten Island, New York ("Wholesaler-1"). Within the next week, a payment of more than $56,000 was made from Corporate Account-1 to a produce wholesaler based in Coral Gables, Florida ("Wholesaler-2"), two payments of over $13,000 each were made from Corporate Account-1 to a produce wholesaler based in Westlake Village, California ("Wholesaler-3"), and a payment of approximately $212,000 was made from Corporate Account-1 to a produce wholesaler based in Atlanta, Georgia ("Wholesaler-4").

b. At the time of the $415,000 transfer from the Plan on or about May 13, 2010, Corporate Account-1 had a negative balance of approximately $133,000. That negative balance was caused, in part, by the payments, the day before, of over $240,000 from Corporate Account-1 to Wholesaler-4. In the following two days, a payment of over $158,000 was made from Corporate Account-1 to Wholesaler-1, and a payment of approximately $25,000 was made from Corporate Account-1 to an automobile insurance provider based in Stamford, Connecticut for an insurance policy taken out on May 11, 2010 (the "Insurance Policy"). The Insurance Policy provided coverage for, among other

things, five luxury automobiles, at least some of which have been used by THOMAS HOEY, JR., the defendant, for his personal use.

c. On the same day as the $73,000 transfer from the Plan on or about July 17, 2012, a payment of more than $23,000 was made from Corporate Account-2 to Wholesaler-3, a payment of more than $27,000 was made from Corporate Account-2 to a wholesaler based in Newark, New Jersey ("Wholesaler-5"), and one payment of more than $84,000 and another payment of more than $47,000 were made from Corporate Account-2 to Wholesaler-2.

9. Beginning no later than in or about March 2010, the TPA notified THOMAS HOEY, JR., the defendant, that the money removed from the Plan, and specifically the $350,000 that had been removed in plan year 2009 constituted a prohibited transaction. Similarly, in or about October 2013, the TPA notified HOEY that the $73,000 removed from the Plan in plan year 2012 as well as the $415,000 removed in plan year 2010 and the $350,000 removed in plan year 2009 were prohibited transactions.

10. During the time periods during which THOMAS HOEY, JR., the defendant, depleted the Plan, proceeds from Corporate Account-1 were also being used to pay for a credit card account (the "Credit Card Account") that was itself being used for, among other things, HOEY and/or his family's travel, entertainment and other personal uses. For example in or about June 2009, the same month that HOEY

7

transferred $350,000 from the Plan, a $20,000 payment was made to the Credit Card Account from Corporate Account-1. During the statement periods before and after that payment, the Credit Card Account was used to pay for, among other things, travel in London, England, hotels in Manhattan, New York, travel books, tickets from an online ticket broker, and travel to and from Las Vegas, Nevada. In other months in 2009, the Credit Card Account was used to pay for, among other things, travel to and from Cancun, Mexico for HOEY and his family, multiple trips to Aruba, limousine service, and payments to a university attended, at the time, by HOEY's son. In or about May 2010, the same month that HOEY transferred $415,000 from the Plan, a $2,000 payment was made to the Credit Card Account from Corporate Account-1. During the statement periods before and after that payment, the Credit Card Account was used to pay for, among other things, travel to and from San Juan, Puerto Rico for HOEY and his family, tickets from an online ticket broker, and a hotel in Manhattan, New York. In other months in 2010, the Credit Card Account was used to pay for, among other things, department store purchases, limousine service, purchases from a home furniture retailer, travel to and from Cancun, Mexico, Puerto Rico, Paris, France, and Aruba for HOEY and/or his family, and payments to a university attended, at the time, by HOEY's son.

11. Despite the fact that, THOMAS HOEY, JR., the defendant,

had completely depleted the Plan, account statements sent to individual employee beneficiaries of the Plan incorrectly continued to reflect the employees' full account balances and did not reflect that any money had been taken out of the Plan. For example, an employee statement for the period January 1, 2012 through December 31, 2012 reflected that the employee-beneficiary's account balance had grown from approximately $132,000 to approximately $140,000 during the year, the entire amount of which was vested. As a result of HOEY's transfer of Plan assets as described above, however, the total amount of money remaining in the Plan by the end of December 2012 was at most approximately $15,000.

## STATUTORY ALLEGATIONS

12. From at least in or about 2009, up through and including in or about July 2012, in the Southern District of New York and elsewhere, THOMAS HOEY, JR., the defendant, unlawfully, willfully, and knowingly, did embezzle, steal, abstract, and convert to his own use, and to the use of another, moneys, funds, securities, premiums, credits, property, and other assets of an "employee welfare benefit plan or employee pension benefit plan," as that term is defined in Title 18, United States Code, Section 664, and of a fund connected therewith, to wit, HOEY, in a series of transactions, transferred money from his Company's employee profit sharing plan to his Company's bank accounts, which money was then used for corporate and

9

personal expenses.

(Title 18, United States Code, Section 664.)

## COUNT TWO
(Interstate Transportation of Stolen Money)

The Grand Jury further charges:

13. The allegations set forth in paragraphs 1 through 11 are incorporated by reference as if set forth fully herein.

14. From at least in or about 2009, up to and including in or about July 2012, in the Southern District of New York and elsewhere, THOMAS HOEY, JR., the defendant, did transport, transmit, and transfer in interstate and foreign commerce, goods, wares, merchandise, securities, and money, of the value of $5,000 and more, knowing the same to have been stolen, converted and taken by fraud, to wit, HOEY, after embezzling, converting and stealing the proceeds from his Company's employee profit sharing plan, as charged in Count One of this Indictment, used those proceeds to pay for, among other things, hundreds of thousands of dollars' worth of inventory from wholesalers outside of New York State, the payment for which, passed through the Southern District of New York.

(Title 18, United States Code, Sections 2314 and 2.)

## COUNT THREE
(Wire Fraud)

The Grand Jury further charges:

15. The allegations set forth in paragraphs 1 through 11 are

incorporated by reference as if set forth fully herein.

16. From at least in or about 2009, up to and including in or about July 2012, in the Southern District of New York and elsewhere, THOMAS HOEY, JR., the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, and attempting to do so, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, HOEY engaged in a scheme to defraud employees of the Company of the money in their individual profit sharing accounts, and in the course of executing such scheme, caused, among other wires, a facsimile to be sent from Brokerage Firm-2, located in the Southern District of New York, to the Clearing Firm, in Birmingham, Alabama.

(Title 18, United States Code, Sections 1343 and 2.)

## COUNT FOUR
(Money Laundering)

The Grand Jury further charges:

17. The allegations set forth in paragraphs 1 through 11 are incorporated by reference as if set forth fully herein.

18. From at least in or about 2009, up to and including in or about July 2012, in the Southern District of New York and elsewhere,

THOMAS HOEY, JR., the defendant, knowingly and wilfully engaged and attempted to engage in money transactions in criminally derived property of a value greater than $10,000 and which was derived from specified unlawful activity, namely the offense charged in Count One of this Indictment, to wit, HOEY made or caused to be made multiple purchases worth over $10,000, using the funds in his Company's bank accounts that had been transferred from the Company's employee profit sharing plan as charged in Count of this Indictment.

(Title 18, United States Code, Sections 1957 and 2.)

### FORFEITURE ALLEGATION AS TO COUNTS ONE THROUGH THREE

19. As a result of committing the offenses charged in Counts One through Three of this Indictment, THOMAS HOEY, JR., the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), any property, real and personal, which constitutes or is derived from proceeds traceable to such offenses, including but not limited to approximately $838,000 in United States currency.

### FORFEITURE ALLEGATION AS TO COUNT FOUR

20. As a result of committing the money laundering offense charged in Count Four of this Indictment, THOMAS HOEY, JR., the defendant, shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real and personal, involved in said offense, and any property traceable to

such property, including but not limited to approximately $838,000 in United States currency.

### Substitute Assets Provision

21. If any of the above described forfeitable property, as a result of any act or omission of the defendant:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 18 U.S.C. §§ 981(a)(1)(C), 982(b) and 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the above forfeitable property, including but not limited to all of the property set forth above.

(Title 18, United States Code, Sections 981 and 982; Title 21, United States Code, Section 853; and Title 28, United States Code, Section 2461.)

_____   _____
FOREPERSON                        PREET BHARARA
                                  United States Attorney/pmk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

THOMAS HOEY, JR.,

Defendant.

## INDICTMENT

15 Cr.

(18 U.S.C. §§ 2, 664, 1343, 1957, 2314.)

PREET BHARARA
United States Attorney.

A TRUE BILL

Foreperson.

April 13, 2015

Filed Indictment. Case assigned to Judge Furman.

U.S.M.J. Debra Freeman