UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-v-

THOMAS HOEY,

                Defendant.

15 Cr. 229 (PAE)

ORDER

PAUL A. ENGELMAYER, District Judge:

The Court has received an application from defendant Thomas Hoey seeking release from United States Penitentiary ("USP") Lewisberg pursuant to § 3582(c)(1)(A)(i), in light of the risk that the COVID-19 pandemic presents to his health. *See* Dkt. 139 ("Def. Mot."); Dkt. 146 ("Def. Mem."). The Government opposes his request. *See* Dkt. 147 ("Gov't Mem."). For the reasons that follow, the Court denies Hoey's motion.

Between 2009 and 2011, Hoey embezzled roughly $750,000 from employee benefit plans at the banana company for which he served as president and trustee. *See* Dkt. 107 ("First Sent. Tr.") at 54–55. He used portions of the proceeds of that scheme to pay his company's business expenses and to finance his own lavish lifestyle, spending it on adult nightclubs, luxury travel, cocaine, and gambling. *Id.* at 55–57. To maintain the scheme over a period of years, Hoey manufactured false account statements, falsely reported the responsible stewardship of the stolen funds, and thereby allowed his fraud "to persist and deepen." *Id.* at 55–56. And despite having many opportunities to replenish the employee-retirement funds he had raided before he was apprehended, he failed to do so until long into his prison sentence. *Id.* at 56–57; Dkt. 134 ("Second Sent. Tr.") at 68 (discussing $110,000 restitution payment).

On April 13, 2015, Hoey was charged in an indictment with four counts: embezzlement from an employee-benefit plan, in violation of 18 U.S.C. § 664; interstate transportation of stolen money, in violation of 18 U.S.C. § 2314; wire fraud, in violation of 18 U.S.C. § 1343; and money laundering, in violation of 18 U.S.C. § 1957. *See* Dkt. 1; Gov't Mem. at 2. On March 18, 2016, a jury convicted him on all counts. Gov't Mem. at 2; Dkt. 76. On July 29, 2016, the Court sentenced Hoey to 60 months' imprisonment on the first count, and 84 months' imprisonment on each of the other three counts, all to run concurrently. First Sent. Tr. at 74. The Court directed that, of the 84-month sentence imposed, 18 months be served concurrently with a separate, narcotics-related sentence imposed by Judge Castel, and the remaining 66 months be served consecutive to that sentence.[1] *Id.* The Court also imposed three-year terms of supervised release on each count, all to run concurrently with one another, but consecutively to the term of supervised release ordered by Judge Castel. *Id.* at 74–75 (citing "considerable concern that Mr. Hoey, once released from prison, may be tempted to commit further crimes . . . [g]iven the range of crimes he has committed, and the lack of restraint he has shown").

On August 8, 2016, Hoey appealed. Dkt. 102. On July 18, 2018, the Second Circuit affirmed his conviction. Dkt. 110. However, between Hoey's sentencing and that decision, one of Hoey's prior state-court convictions, which the Court had considered in sentencing Hoey in 2016, was vacated on appeal. *Id.* at 9. The Circuit thus vacated only his sentence, and remanded for resentencing in light of that change in circumstances. *Id.*

---

[1] That conviction arose from Hoey's distribution of cocaine, and the related death of a woman named Kim Calo. *See* First Sent. Tr. at 60–65 (summarizing 2015 sentencing remarks by Judge Castel, including finding that Hoey "refrained from getting Ms. Calo needed medical assistance" in order to avoid "the chance that his cocaine-based lifestyle was going to be exposed"). Hoey is currently serving a 141-month sentence in that case, which is expected to end, assuming good-time credit, in December 2023. *See* Gov't Mem. at 10 n.3; *id.*, Ex. D.

On July 17, 2019, the Court resentenced Hoey. In doing so, it discussed three potentially relevant pieces of new information: (1) the vacatur of Hoey's state-court conviction; (2) Hoey's claim that he had paid $110,000 in restitution; and (3) Hoey's claim that he had rehabilitated in prison. Second Sent. Tr. at 67–68. Although the Court found that the second two facts did not warrant any reduction in sentence, *id.* at 70, 73, it did find that the vacatur of Hoey's state-court conviction changed the calculus. Based on the latter, the Court reduced Hoey's overall sentence in this case by six months, to 78 months' imprisonment. *Id.* at 74. However, the Court held that such reduction was properly taken out of the portion of Hoey's sentence that would run concurrently with the sentence Judge Castel had imposed, not the consecutive portion of Hoey's sentence here. *Id.* at 75–76. That was because the now-vacated state-court conviction was equally known to both Judge Castel and the Court when they originally imposed sentence, and because Judge Castel had already, in light of the vacatur, reduced Hoey's sentence in that case by 10 months, from 151 to 141 months' imprisonment. *Id.* at 76 ("[T]he elimination of the state domestic abuse conviction does not justify a greater sentence reduction across the two cases than ten months."). Accordingly, the Court resentenced Hoey to a term of 78 months' imprisonment, with 12 months to be served concurrently with, and 66 months to be served consecutively to, the sentence imposed by Judge Castel. *Id.* at 77–78. On July 30, 2019, Hoey again appealed. Dkt. 132. That appeal is pending before the Second Circuit. Gov't Mem. at 4.

Hoey has been incarcerated since his December 2013 arrest in connection with the case before Judge Castel. First Sent. Tr. at 41; Gov't Mem., Ex. D at 3, 5. He has thus served about 90 months of his 141-month sentence there (and of his 207-month total sentence across the two cases), and zero months of his consecutive sentence here. His expected release date is August 31, 2028. Gov't Mem., Ex. D at 3.

3

On March 8, 2021, the Court received a *pro se* motion from Hoey seeking release in light of the COVID-19 pandemic. On March 24, 2021, the Court reappointed Hoey's resentencing counsel to file a memorandum in support of his motion. Dkt. 141. On June 14, 2021, Hoey's counsel filed that memorandum. Hoey and his counsel argue that compassionate release is warranted here in light of the pandemic, the unexpectedly harsh and dangerous circumstances at Federal Correctional Institution ("FCI") Fort Dix (where Hoey was previously incarcerated) and USP Lewisburg (where Hoey is presently incarcerated) that resulted from the pandemic, and Hoey's alleged hypertension and sleep apnea, which they contend put him at heightened risk of contracting severe COVID-19. Hoey's counsel also cites his rehabilitation as a factor favoring early release. On June 22, 2021, the Government opposed Hoey's motion. It argues that the Court lacks jurisdiction to grant that motion given his pending appeal. It also argues that, were the Court to address the merits of Hoey's application under Federal Rule of Criminal Procedure 37(a), it should deny the motion because Hoey's case does not present any extraordinary and compelling circumstances, and his release would conflict with the factors set forth in 18 U.S.C. § 3553(a).

## I.      Jurisdiction

In light of Hoey's pending appeal, the Court lacks jurisdiction to grant his motion. "The filing of a notice of appeal is an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "That rule applies in criminal cases." *United States v. Ransom*, 866 F.2d 574, 575 (2d Cir. 1989) (collecting cases). And, as the Circuit has held, while a district court may correct "clerical errors" after an appeal has been filed, we may not make "substantive modifications of judgments." *Id.* (citation omitted).

Under these circumstances, the Court lacks authority to "rule on any motion affecting an aspect of the case that [is] before" the Court of Appeals. *Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002); *see also, e.g.*, *Berman v. United States*, 302 U.S. 211, 214 (1937) (rule prohibited resentencing); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983). "Once [Hoey] filed his notice of appeal challenging the Court's sentence, jurisdiction over the questions raised in his § 3852(c) motion transferred to the Second Circuit." *United States v. Heyward*, No. 15 Cr. 445 (PAE), 2020 WL 3872148, at *2 (S.D.N.Y. July 9, 2020); *see United States v. Boria*, No. 17 Cr. 142 (RA), 2021 WL 1893324, at *2 (S.D.N.Y. May 11, 2021) ("This rule is regularly applied where, as here, a defendant appeals from his judgment of conviction and subsequently files a motion for compassionate release pursuant to Section 3582(c).").

Federal Rule of Criminal Procedure 37(a), however, anticipates precisely the jurisdictional issue present here. It provides:

> If a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue.

The advisory committee notes to that rule's 2011 amendment list "motions under 18 U.S.C. § 3582(c)" as one of three types of motions for which the drafters "anticipated that Criminal Rule 37 will be used primarily if not exclusively." Reflecting this Circuit's longstanding approach in both civil and criminal cases, *see, e.g.*, *United States v. Camacho*, 302 F.3d 35, 36–37 (2d Cir. 2002); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002); *Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir. 1992), this rule allows district courts to deny, but not to grant, a motion for which it lacks jurisdiction due to a pending appeal.

5

**II.    Merits**

Because the Court would deny Hoey's § 3582(c) motion had he not filed a notice of appeal, in the interests of judicial economy, the Court reaches the merits, pursuant to Rule 37, and, for the reasons that follow, denies the motion.

Under 18 U.S.C. § 3582(c)(1)(A), a court:

> upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that— (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c).  *See United States v. Butler*, 970 F.2d 1017, 1026 (2d Cir. 1992) ("If the defendant seeks decreased punishment, he or she has the burden of showing that the circumstances warrant that decrease."); *United States v. Clarke*, No. 09 Cr. 705 (LAP), 2010 WL 4449443, at *1 (S.D.N.Y. Oct. 29, 2010).

Originally, § 3582(c)(1)(A) did not permit prisoners to initiate compassionate release proceedings, and instead required the Bureau of Prisons ("BOP") to seek such release on their behalf.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23, 427 (S.D.N.Y. 2020).  However, with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release from federal courts.  *Ebbers*, 432 F. Supp. 3d at 422–23.

The Second Circuit has recently clarified the regulatory guidance applicable to § 3582(c) applications made by defendants.  Before the First Step Act, Congress had tasked the Sentencing Commission with identifying circumstances that are sufficiently extraordinary and compelling to

6

justify a reduction in sentence. *Id.* at 427 (citing 28 U.S.C. § 994(t)). The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary. That guidance (1) sets out various circumstances that present extraordinary and compelling reasons for release; and (2) requires that a defendant not be a danger to the community. *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).

By its terms, however, the Commission's guidance applies only to a "motion of the Director of the Bureau of Prisons," *id.* § 1B1.13; the Commission has not updated § 1B1.13 or its commentary to reflect the First Step Act's amendment to § 3582(c)(1)(A) authorizing defendants to move for compassionate release on their own. Accordingly, although courts, including this one, had widely treated the Commission's guidance as applicable to all compassionate release motions, *see, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *see also Ebbers*, 432 F. Supp. 3d at 428, the Second Circuit has clarified that § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases. *United States v. Brooker*, 976 F.3d 228, 236 (2d Cir. 2020); *see also id.* at 237 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

Consistent with *Brooker*, in assessing a § 3582(c) motion brought directly by a defendant, the Court is not constrained by either § 1B1.13's enumeration of extraordinary and compelling reasons, or its freestanding requirement that the defendant seeking release not pose any danger to the community. Rather, the Court, "after considering the factors set forth in section 3553(a) to the extent that they are applicable," 18 U.S.C. § 3582(c)(1)(A)(i), may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release." *Brooker*, 976 F.3d at 237.

7

In almost all respects, Hoey's case is unusually ill-suited to compassionate release.

First, he does not present extraordinary and compelling reasons for such release. To be sure, the COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. The crowded nature of federal prisons in particular presents an outsized risk that the COVID-19 contagion, once it gains entry, will spread.[2] In that respect, COVID-19 poses a heightened health risk to all inmates. And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. Beyond the risks to health, the pandemic has also subjected all inmates to far more restrictive conditions of confinement, and has resulted in limits on access to visitors, including family, far beyond what could have been expected at the time of sentencing. For these reasons, in the past 15 months, various courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody[3] and the compassionate release of high-risk inmates serving federal sentences.[4]

---

[2] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, 450 F. Supp. 3d 491, 492 (S.D.N.Y. 2020).

[3] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, under 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, 450 F. Supp. 3d 449 (S.D.N.Y. 2020) (granting bond pending sentencing, under 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had been released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, under § 3145(c), to defendant who had pleaded guilty to a narcotics offense); *cf. United States v. Stephens*, 447 F. Supp. 3d 63 (S.D.N.Y. 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would require his temporary release).

[4] *See, e.g.*, *United States v. Mcrae*, No. 17 Cr. 643 (PAE), 2021 WL 142277, at *5 (S.D.N.Y. Jan. 15, 2021) (granting compassionate release to defendant with medical conditions putting him

Hoey, however, offers limited reasons why the risks he faces exceed those faced by others in federal custody. Although he alleges that he has hypertension—which the Government concedes would place him at a higher risk of contracting severe COVID-19—his medical records refute that claim. *See* Gov't Mem. at 3, 8 (citing Def. Mot. at 31–34); *id.*, Ex. B (medical records filed under seal). And although, as the Government concedes, Hoey does have sleep apnea, the CDC has not identified that condition as placing individuals at heightened risks from COVID-19.[5] Some research has suggested that sleep apnea might be associated with such risks,[6] but at this point Hoey has both contracted a mild case of COVID-19 and been fully vaccinated against the disease; he thus appears to be at a fairly low risk of contracting it, or of suffering from a severe case if he were to do so. Gov't Mem. at 8–9.

Beyond these conditions, Hoey presents only generalized concerns about the pandemic that fail to differentiate him from the mine run of federal prisoners who have been incarcerated during the past 15 months. *See, e.g.*, *United States v. Felix*, No. 12 Cr. 322 (RJS), 2020 WL

---

at heightened risk of severe COVID-19 and who had served 75% of effective sentence); *United States v. Lizardi*, No. 11 Cr. 1032 (PAE), Dkt. 2532 at 1–2, 9 (S.D.N.Y. Oct. 9, 2020) (same for defendant who had served 93 months of a 121-month sentence and was scheduled to be released to a halfway house in five months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (S.D.N.Y. Sept. 15, 2020) (same for defendant with asthma who had served nine years of his 10-year sentence); *United States v. Wilson*, No. 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020) (same for defendant with heighted vulnerability who had served the substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy); *United States v. Simon*, 482 F. Supp. 3d 151, 154–56 (S.D.N.Y. 2020) (same for elderly defendant, who had serious medical conditions and played a low-level role in a drug trafficking conspiracy).

[5] *See People with Certain Medical Conditions*, Ctrs. for Disease Control & Prevention (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

[6] Tori Rodriguez, Obstructive Sleep Apnea as a Potential Risk Factor for COVID-19: Expert Interview, Pulmonology Advisor (Aug. 12, 2020), https://www.pulmonologyadvisor.com/home/topics/obstructive-sleep-apnea-osa/obstructive-sleep-apnea-may-increase-risk-for-coronavirus-disease-2019/

4505622, at *2 (S.D.N.Y. Aug. 4, 2020) ("[C]ourts have consistently recognized that the pandemic itself—without more—does not present extraordinary and compelling circumstances warranting a compassionate release." (collecting cases)). His circumstances thus sharply contrast with those of various sentenced defendants whose release, on account of heightened vulnerability to COVID-19, this Court has ordered under § 3582(c). *See supra* note 4; *e.g.*, *Simon*, 482 F. Supp. 3d at 154–56 (granting compassionate release to 72-year-old defendant with HIV, chronic obstructive pulmonary disorder, prostate cancer, Hepatitis C, and hypertension); *United States v. Davies*, 469 F. Supp. 3d 175, 178–80 (S.D.N.Y. 2020) (similar).

The Court thus finds that Hoey has failed to identify extraordinary and compelling reasons for his release. That, alone, suffices to deny his motion. But even assuming that such reasons were present, to find early release justified, the Court would also have to find that his release at this point is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A). As much as almost any other case the Court has considered under that provision, here those factors decisively disfavor Hoey's early release from prison. Essentially each one—especially the need to "reflect the seriousness of the offense, to promote respect for the law, . . . to provide just punishment for the offense[,] . . . [and] to afford adequate deterrence to criminal conduct"—forcefully require that the sentence imposed be served in full. 18 U.S.C. § 3553(a)(2).

The Court incorporates by reference here its lengthy assessments of those factors at both of Hoey's sentencing proceedings. In brief, those remarks made pellucid that a substantial sentence is necessary here given the severity of Hoey's misconduct, the effect it had on his victims' lives, and the profligate, unrepentant criminality that had defined Hoey's life to that point. *See, e.g.*, First Sent. Tr. at 57 ("At every turn, Mr. Hoey, in violation of your position of trust and the

10

devotion you claim to have had for your family business's long-time employees, you put yourself first. And unlike many defendants whom I have occasion to sentence, there aren't obvious mitigating factors."); *id.* at 59 ("Pension theft is a serious crime. It endangers retirement security of hard-working people who play by the rules. The sentence I impose here, in combination with sentences that my fellow judges impose in similar cases, need to be loud enough and long enough to get the attention of other small businessmen and women. They need to know that if they dip into the retirement funds that they are duty-bound to protect, and they get caught, they will lose their liberty."); *id.* at 60 ("[Y]our track record suggests a willingness to commit all sorts of crimes and wrongs, impulsive and planned, narcotics and white collar, when it suits your purpose. Based on the trial record, based on the record of your prior trial, I have no confidence, none, that if you were released from prison any time soon, you would turn over a new leaf. If any sentence is capable of getting your attention, so as to lead you to conform your behavior to the law, it would have to be a very long one."); *id.* at 61 ("The sentence that I impose here needs to take account of the risk that, if released, you would continue to damage others in your path. Your cocaine distribution to Kim Calo and your refusal to call for help when she was unconscious and dying is the most extreme example of selfish conduct. But that word 'selfishness' . . . fits here too in your theft from your employees' retirement plan.").

Similar concerns drove the Court to conclude that a sentence largely consecutive to the one imposed by Judge Castel was absolutely necessary. That was true both at Hoey's original sentencing, *see id.* at 68–71 ("The argument for a fully concurrent sentence is, in my view, extraordinarily unpersuasive"); *see also id.* at 69 ("And so the sentence here needs to be consecutive enough to sufficiently take into account the nature and the seriousness of the offense here, which no court has yet passed judgment on, and, for that matter, your dogmatic defense of

11

your conduct here as beneficial to your employees."), and at his 2019 resentencing, *see* Second Sent. Tr. at 76–78. Those assessments remain apt. Given that Hoey has yet to finish serving the 141-month sentence imposed by Judge Castel, granting his application today would profoundly disserve the interests just discussed; it would, unthinkably, eliminate *all* punishment unique to the "aggravating, protracted, selfish, wrong, and contemptuous" conduct at the center of this case—*i.e.*, Hoey's theft of his employees' retirement benefits—despite the Court having now twice found such consecutive penalties to be necessary.[7] Neither the pandemic conditions, nor Hoey's claimed rehabilitation, nor his desire to make good on his restitution obligations, *see* Def. Mem. at 5—the latter two of which the Court has already rejected as bases for the reduction of Hoey's sentence, *see* Second Sent. Tr. at 70, 73—come close to overriding the § 3553(a) factors requiring a substantial, consecutive prison sentence here.

Accordingly, finding both that there are no extraordinary and compelling reasons for Hoey's release and that the § 3553(a) factors considered in combination do not support a reduction of sentence, the Court denies Hoey's motion for compassionate release under 18 U.S.C. § 3582(c).

SO ORDERED.

PAUL A. ENGELMAYER
United States District Judge

Dated: June 30, 2021
New York, New York

---

[7] The Court understands that Hoey also has filed a motion for compassionate release in his case before Judge Castel, which remains pending. *See United States v. Hoey*, No. 11 Cr. 337-3 (PKC), Dkt. 287 (S.D.N.Y. filed Feb. 16, 2021). For the reasons given, the Court's decision would remain unchanged should Judge Castel decide that compassionate release is warranted there. The Court does not express a view as to the propriety of release in that case, and notes only that, irrespective of any decision in No. 11 Cr. 337, there remains a powerful interest in Hoey serving the full term of imprisonment imposed in this case.